UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MARY BECKER, | : | Case No. 1:07-cv-950 |
| | : | |
| Plaintiff, | : | Judge Herman J. Weber |
| | : | Magistrate Judge Timothy S. Black |
| vs. | : | |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND NOT SUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE ALJ UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g); AND (3) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding Plaintiff was not entitled to disability insurance benefits ("DIB") and supplemental security income ("SSI"). (*See* Administrative Transcript ("Tr.") at 64-66, 262-64) (ALJ's decision)).

**I.**

On February 24, 2004, Plaintiff filed an application for DIB and SSI, due to chronic obstructive pulmonary disease ("COPD"), depression, and chronic back pain.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

(Tr. 64-66, 262-64).[2] Plaintiff's claim was denied initially and upon reconsideration. (Tr. 35-39, 41-43). Plaintiff then timely requested a hearing before an ALJ. (Tr. 44). A hearing was held on May 2, 2007, at which Plaintiff appeared with counsel and testified. (Tr. 55-60). A vocational expert, Janet Chapman, was also present and testified. (*Id.*)

On May 16, 2007, the ALJ entered her decision finding Plaintiff was not disabled. (Tr. 15-26). That decision became Defendant's final determination upon denial of review by the Appeals Council. (Tr. 5-7).

The ALJ's "Findings," which represent the rationale of her decision, were as follows:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2006.

2. The claimant has not engaged in substantial gainful activity from October 15, 2002, the alleged onset date to March 15, 2005, the requested closed period of disability (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: chronic obstructive pulmonary disease, a history of substance abuse, depression, and post traumatic stress disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

---

[2] Plaintiff's claim is for a closed period of benefits from October 15, 2000 through March 15, 2005. Since March 2005, Plaintiff resumed working, alleging that her breathing improved as a result of changing her pulmonary medications and decreasing smoking. (Tr. 285, 311, 323-25). Additionally, Plaintiff's supervisor is flexible and accommodates her impairments. (*Id.*)

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light exertional work.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on September 16, 1954 and was 48 years old, which is defined as a younger individual, on the alleged disability onset date, with the claimant being 50 years old, which is defined as closely approaching advanced age, as of the close of the requested closed period of disability (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. The claimant has acquired work skills from past relevant work (20 CFR 404.1568 and 416.968) that would transfer to lower level semi-skilled jobs.

10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1560(c), 404.1566, 404.1568(d), 416.960(c), 416.966, and 416.968(d)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 15, 2002 through March 15, 2005, the requested closed period of disability (20 CFR 303.1520(g) and 416.920(g)).

(Tr. 20-26).

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not eligible for DIB or SSI during the closed period. (Tr. 26).

On appeal, Plaintiff maintains that: (1) the ALJ erred in determining Plaintiff's RFC; (2) the ALJ erred in not finding Plaintiff at least "equaled" Listing 3.02(a); and (3) the ALJ erred in not finding Plaintiff's back pain severe. Upon careful review, the undersigned finds each of Plaintiff's assignments of error to be well-taken and dispositive, and, accordingly, hereby recommends that this matter be remanded under sentence four of 42 U.S.C. § 405(g).

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, she must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

## A.

For her first assignment of error, Plaintiff maintains that the ALJ erred when she failed to note the limitations set forth in Plaintiff's RFC form.

The ALJ found Plaintiff had the RFC to "understand, remember, and carry out simpler job tasks in routine work settings, which involved minimal contact with others." (Tr. 21). She further found that Plaintiff had "mild limitations in her ability to perform activities of daily living and moderate limitations in her ability to relate to others and in her concentration, persistence and pace." (*Id.*) In making these determinations, the ALJ relied on the opinion of a non-examining physician, Dr. Lewin, as opposed to the examining physician, Dr. Deardorff. (Tr. 169-170).

In determining a plaintiff's RFC, the Social Security Administration has established a hierarchy of medical opinions. The regulations clearly state that a treating doctor's opinion must be given "controlling weight" if "well-supported" by objective evidence. 20 C.F.R. § 404.1527(d)(2). Next in the hierarchy are examining physicians. Generally, the Administration gives more weight to the opinion of an examining source than to the opinion of a non-examining source. 20 C.F.R. § 404.1527 (d)(1). Last in the hierarchy is the opinion of the non-examining physician.

Dr. Deardorff, the examining physician, found that Plaintiff's "ability to withstand the stress and pressure of day-to-day work activity [was] moderately to seriously impaired." (Tr. 139). He felt the stress and pressure of work could result in increased anxiety and decreased attention and concentration. (*Id.*) He further noted that stress and pressure could exacerbate Plaintiff's PTSD symptoms, which would interfere with her ability to relate adequately to others. (*Id.*) Dr. Deardorff concluded that Plaintiff could also experience increased depressive symptoms, such as crying, withdrawal and slowed work performance, which could even result in increased drug and alcohol use. (*Id.*)

Dr. Deardorff concluded that Plaintiff had a GAF score of 45,[3] indicating that Plaintiff suffered from "serious" symptoms. (Tr. 138). Plaintiff's GAF score alone would support claimant's inability to work and is consistent with the treatment notes of Plaintiff's primary care physician. (Tr. 134, 136).

In 1995, Plaintiff was admitted to the hospital on three different occasions for attempted suicide. (Tr. 116-133). On several office visits, Plaintiff's primary care physician noted she was tearful, anxious and depressed. (Tr. 193-194, 201, 204, 206, 231, 237, 242). Although the ALJ spent considerable time discussing Plaintiff's history of substance abuse in the decision, neither physician noted that Plaintiff's symptoms were a result of her substance abuse. In fact, Dr. Deardorff opined that the stress and pressure of

---

[3] A GAF (Global Assessment Functioning) of 41-50 is defined as serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting), or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job). DSM-IV-TR at 34.

work could result in increased drug and alcohol use. (Tr. 138).

At the hearing, the vocational expert testified that Plaintiff would be unable to work based on Dr. Deardorff's findings. (Tr. 332). Nevertheless, in her decision, the ALJ did not discuss Dr. Deardorff's GAF, nor did she explain why she rejected his opinion. The ALJ may not selectively consider the evidence in denying benefits, however. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240-241 (6th Cir. 2002).

Social Security Ruling 96-8p (1996) requires an ALJ to provide a narrative discussion as to how she arrived at the RFC.

> "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. <u>The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.</u>"

SSR No. 98-8p, 1996 SSR LEXIS 5, at *19, July 2, 1996 (emphasis added).

Here, the ALJ failed to provide the requisite narrative discussion with regard to Plaintiff's mental RFC. (Tr. 21, 23). Moreover, the ALJ does not discuss the inconsistencies between the findings of Dr. Deardorff and Dr. Lewin.[4]

---

[4] In fact, Dr. Lewin found that Plaintiff had a depressive disorder and post traumatic stress disorder during the closed period. (Tr. 156-61).

-7-

When the evidence presents conflicting probative evidence, the ALJ must explain why that conflicting evidence was not credited. *Fargnoli v. Halter*, 247 F.3d 34, 42 (3rd Cir. 2001); *Cotter v. Harris*, 642 F.2d 700, 705 (3rd Cir. 1981). In *Cotter*, for example, the ALJ indicated evidence in support of his finding that the claimant was not disabled, but neglected to explain why he rejected evidence in the claimant's favor. Accordingly, the court in *Cotter* remanded the case, with instructions that the ALJ more fully explain his decision. *Id*. at 708.

Here, because the ALJ failed to accord any significant weight to the opinion of the examining physician in this case, her RFC finding, which relies on the RFC of a one-time consultative examiner, to the exclusion of an examining physician, is without substantial support in the record. Therefore, the ALJ's RFC is conclusory and thus does not comply with the requirements of Ruling 96-8p (1996).

Plaintiff also argues that the ALJ gave too much weight to the consultative physician, Dr. Morton, when evaluating Plaintiff's lung condition where Plaintiff's primary care physician, Dr. Cantor, felt that Plaintiff was disabled due to the lung condition. (Tr. 175, 181-82). Despite evidence that Plaintiff reported shortness of breath with light activity, had difficulty going upstairs, and needed to stop and rest due to difficulty breathing (Tr. 182, 185), the ALJ found Plaintiff could stand/walk about six hours in an eight hour day and could frequently climb ramps and stairs. (Tr. 21). However, the ALJ does cite substantial evidence that Plaintiff was not disabled due to her COPD (Tr. 24), and although Plaintiff propounds substantial evidence supporting her

disability, if substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed.

Accordingly, it is recommended that this case be remanded with instructions that the ALJ explain why she rejected Dr. Deardorff's RFC in favor of a non-examining physician as required by SSR No. 98-8p.

**B.**

For her second assignment of error, Plaintiff maintains that the ALJ erred in not finding Plaintiff at least "equaled" Listing 3.02(a).

Listing 3.02(a) mandates an award of benefits to an individual with COPD, due to any cause, with the FEV1[5] equal to or less than the values corresponding to the person's height. The Listing specifies that the results should be the largest of at least three satisfactory forced expiratory maneuvers and the test should be repeated after an administration of a bronchodilator. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 3.00(E).

The record clearly shows that Plaintiff suffers from COPD. The treatment notes from Plaintiff's primary care physician, Dr. Cantor, indicate more than a "mild" disease. Dr. Cantor often found decreased or distant breath sounds, wheezing and rhonchi on Plaintiff's exams. (Tr. 179-180, 182, 184-185, 193, 198, 200, 215, 218, 224, 227-228, 230, 234, 236, 245). In April of 2004, Dr. Cantor noted that Plaintiff was very short of

---

[5] FEV1 is the acronym for "Forced Expiratory Volume in the First Second." FEV test results are expressed in liters. Linda Cocchiarella & Gunnar B.J. Andersson, *Guides to the Evaluation of Permanent Impairment*, American Medical Association, p. 99 (2001).

breath all day, every day, and seemed to have little improvement with medications. (Tr. 175). Dr. Cantor felt Plaintiff was disabled and supported her claim on the basis of COPD. (*Id.*) Plaintiff was instructed to stop smoking, and by September of 2004 she had significantly reduced her level of smoking.[6] (Tr. 173).

A pulmonary function test in February of 2004 showed an FEV1 of 1.70 with Plaintiff's height being 65 inches. (Tr. 183). In May of 2004, at the request of the Administration, Plaintiff underwent additional pulmonary function testing. The FEV1 readings on the three attempts were 1.17, 1.23 and 1.26 respectively, with Plaintiff's height listed at 63 inches. (Tr. 142). Regardless of the discrepancy in Plaintiff's height between February and May of 2004, a test result of 1.26 ("the results should be the largest of . . . three . . . maneuvers") is not equal to or less than the requisite 1.25 listing level. Accordingly, the ALJ properly determined that Plaintiff's FEV1 testing results were not equal to or less than the requisite level.

However, Plaintiff also alleges that when considering COPD in combination with her severe back pain and depression, the evidence equaled the Listing during the closed period. Plaintiff's impairment need not precisely meet the criteria of the Listing in order to obtain benefits. If Plaintiff's impairment or combination of impairments is medically equivalent to one in the Listing, disability is presumed and benefits are awarded. 20

---

[6] The ALJ noted in her decision that the Plaintiff continued to smoke despite alleging disability due to breathing problems. (Tr. 23). However, continued smoking against the advice of a doctor does not *per se* disqualify a Plaintiff from receiving disability benefits. 20 C.F.R. § 404.1530 (a).

C.F.R. § 404.1520(d); *see also Barney v. Sec'y of Health & Human Servs.*, 743 F.2d 448, 453 (6th Cir. 1984).

To determine medical equivalence, the Commissioner compares the symptoms, signs, and laboratory findings concerning the alleged impairment with the medical criteria of the listed impairment. 20 C.F.R. § 404.1526(a). The decision is based solely on the medical evidence, which must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1526(b). In determining whether an impairment meets the listings, the ALJ must consider all of the relevant evidence. *Fargnoli*, 247 F.3d at 41; *Drapeau v. Massanari*, 255 F.3d 1211, 1212 (10th Cir. 2001).

The ALJ is required to review the claimant's symptoms and make specific findings essential to the conclusion. *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). It is unnecessary, however, to require the ALJ to state why a claimant failed to satisfy every element of a Listing. *Id*. at 1201. Further, the ALJ is not required to specifically identify the evidence supporting the ALJ's conclusion that the impairment does not meet a Listing. In *Gonzalez*, for example, the ALJ did not specifically state what evidence supported his conclusion as to why the claimant's impairments failed to meet the listings. However, the Ninth Circuit found that the ALJ's five page, single-spaced summary of the record served as an adequate statement of the foundations on which the ALJ's ultimate factual conclusions were based. *Id*.

Nevertheless, the ALJ's findings should be as comprehensive and analytical as feasible, and should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the ALJ's decision. *Cotter*, 642 F.2d at 705. Otherwise, the reviewing court is unable to properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Secretary's decision is supported by substantial evidence. *Cotter*, 642 F.2d at 705.

Here, based upon a review of the record, the assignments of error, and the law, the undersigned recommends that the Court find that substantial evidence supports the ALJ's decision that Plaintiff's COPD, alone, does not meet Listing 3.02(a). However, the record does not reflect that the ALJ considered Plaintiff's impairments in combination. Accordingly, the Court is unable to properly exercise its responsibility under 42 U.S.C. §405(a). Therefore, the undersigned recommends that the instant case be remanded for a statement of factual conclusions and narrative that the ALJ considered Plaintiff's impairments in combination and determined that they do not equal the Listing 3.02(a).

## C.

For her third assignment of error, Plaintiff maintains that the ALJ erred in not finding Plaintiff's back pain severe.

The ALJ did not consider Plaintiff's back pain a "severe impairment." (Tr. 20). In reaching this conclusion, the ALJ relied on Dr. Morton's analysis, who concluded that there was no evidence of spinal nerve damage. (Tr. 15). However, the record also reflects that Plaintiff's back pain was so severe that she was referred for pain management in 2001; and in April of 2004, Dr. Cantor felt Plaintiff's back pain "needed further work up." (Tr.

175, 190, 193, 210, 212-214). Upon examination, Plaintiff had many findings which supported Plaintiff's claim including tenderness, pain, limited flexion, positive straight leg raise, and an inability to heel/toe walk. (Tr. 190, 193, 210, 213-14).

The ALJ failed to consider the effects of Plaintiff's back pain in her RFC. "In assessing a Plaintiff's RFC, the adjudicator <u>must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe</u>." SSR 96-8p (emphasis added). The ALJ's assessment does not include any indication that she considered Plaintiff's back pain. Because the ALJ erred in failing to consider Plaintiff's back pain in her RFC, this case should be remanded for a complete analysis.

### III.

A sentence four remand provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Sec'y of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175. "It is well established that the party seeking remand bears the burden of showing that a remand is proper under Section 405." *Culbertson v. Barnhart,* 214 F. Supp. 2d 788, 795 (N.D. Ohio 2002) (*quoting Willis v. Sec'y of Health & Human Servs.,* 727 F.2d 551 (6th Cir. 1984)).

**IV.**

Based upon the foregoing, the undersigned concludes that remand is appropriate in this matter because there is insufficient evidence to support the ALJ's decision.

**IT IS THEREFORE RECOMMENDED** that the decision of the Commissioner to deny Plaintiff DIB and SSI benefits for a closed period be **REVERSED**, and this matter be **REMANDED** under sentence four of 42 U.S.C. § 405(g) so that the ALJ can accurately include all of Plaintiff's impairments and restrictions into her RFC assessment, including a narrative explanation for rejecting Dr. Deardorff's RFC, and an analysis of whether Plaintiff's impairments (COPD, back pain, and depression) in combination equal the Listing.

Date:  December 23, 2008               s/ Timothy S. Black
                                       Timothy S. Black
                                       United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| MARY BECKER, | : | Case No. 1:07-cv-950 |
| --- | --- | --- |
| Plaintiff, | : | Judge Herman J. Weber |
| | : | Magistrate Judge Timothy S. Black |
| vs. | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **TEN (10) DAYS** after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to **THIRTEEN (13) DAYS** (excluding intervening Saturdays, Sundays, and legal holidays) when this Report is being served by mail and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within **TEN (10) DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).